UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | § § § § | CRIMINAL ACTION NO. 4:16-CR-176 |
| v. | § § § § | |
| JAMES MORRIS BALAGIA, Defendant. | § § | |

**DEFENDANT'S MOTION TO COMPEL DISCOVERY**

James Morris Balagia, by and through the undersigned counsel, respectfully moves this court pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E) for the discovery and production of exculpatory and material evidence. In support of the motion, Mr. Balagia states:

**BACKGROUND**

Defendant Balagia has been charged by the United States Attorney's Office for the Eastern District of Texas with conspiracy to commit money laundering; obstruction of justice and aiding and abetting; conspiring, endeavoring, and attempting to violate the Kingpin Act; conspiracy to commit wire fraud in violation of 18 U.S.C. §1343; and conspiracy to obstruct justice. The basis of each of these allegations stems from criminal matters on which Defendant Balagia was the attorney for the criminal defendants who are Colombian citizens; specifically, *United States v. Hermes Casanova Ordonez, a.k.a. "Megatron"*, criminal number 4:13-cr-38; *United States v. Segundo Villota-Segura*, criminal number 4:13-cr-38; and *United States v. Aldemar Villota-Segura*, criminal number 4:13-cr-38.

1

## STATEMENT OF FACTS

Counsel for Defendant Balagia has received over 10,000 pages of discovery documents from the Government. Many of these documents are FBI reports and summaries that refer to exculpatory information, but do not actually provide the exculpatory information.

Specifically, the government has alleged that Defendant Balagia, in concert with Charles Morgan obstructed justice by bribing and/or attempting to bribe certain government officials. As a basis for such allegations, the government claims that alleged co-conspirator Charles Morgan made "[n]umerous phone calls" to David Ross Malone.[1] See document bates stamped Balagia 06569, attached hereto as **Exhibit B**. If such telephone calls occurred, the date upon which they occurred is relevant to Defendant Balagia's defense. If such telephone calls did not occur, the lack of such telephone calls would also be relevant. Defendant Balagia has requested that the government provide the records of the alleged calls, or if they government has already provided such records, to identify the file name to enable defense counsel to locate it. See **Exhibit C**.

Relevant to Defendant Balagia's defense is whether the alleged co-conspirator Charles Morgan had actual or apparent authority to operate as an agent for the United States government. Through its own investigation, defense counsel has learned that Mr. Morgan has in the past worked (and may still currently be working) for the CIA in various capacities starting with piloting aircraft for the CIA in Vietnam and then leading to bringing potential clients to lawyers with a goal of having the clients cooperate with the government. Charles Morgan's military records support his assertions that he flew for the CIA in Vietnam. Morgan was a Chief Warrant Officer 2, which as former Navy Judge Advocate General, counsel can

---

[1] The documents provided to Defendant also identify Mr. Malone as David Ross Morgan. Defendant is without information to determine which name is correct.

confirm is a person who attained the rank of an officer through extraordinary channels which do not require college education.[2] See documents bates stamped Balagia 024708-024711, attached hereto as **Exhibit F**. Morgan was decorated with the following awards which confirm his assertion that he was an aviator in Vietnam: National Defense Service Medal, Army Aviator Badge, Vietnam Service Medal, RVN Campaign Medal w/ 1960 device, RVN Gallantry Cross with Unit Palm Citation. See **Exhibit F**. The defense investigation is also supported by travel records provided by the government indicating that Mr. Morgan's CIA or FBI handler is likely in Ohio, either Cincinnati or Columbus.

Further, documentation received from the government supports the Defendant's contention that Charles Morgan previously (and perhaps currently) worked in either an undercover capacity or informant capacity. If Morgan did not operate as an agent for the government, he has been involved as a cooperating source or confidential informant in prior instances with the government where alleged narcotics traffickers were involved. Specifically, it is known that Charles Morgan was involved with Operation COINROLL. See document bates stamped Balagia 23483, attached hereto as **Exhibit A**. Defense investigation revealed that COINROLL was the FBI operation targeting Barry Seal. It is unclear if Mr. Morgan was involved in working undercover to capture Barry Seal or if Mr. Morgan was involved in working undercover to capture Mr. Seal's killers. Defense investigation revealed that Mr. Morgan did not work for the FBI in the COINROLL investigation and therefore it is likely his COINROLL involvement was through the CIA. As such, defense counsel has requested all

---

[2] Chief Warrant Officer 2 (CW2) is the second Warrant Officer rank in the Unites States Army. They are officially appointed by the Secretary of the Army. They are intermediate level experts of both the technical and tactical aspects of leading in their field. Responsibilities of a Chief Warrant Officer 2 are ones that would typically call for the authority of a commissioned officer but require also the intricate technical abilities and experience a commissioned officer would not have has the opportunity to achieve. They have responsibilities of leading at the battalion level. https://www.military-ranks.org/army/chief-warrant-officer-2

documents related to Mr. Morgan's connection to COINROLL, Mr. Morgan's Homeland Security Investigation file, specifically including any of Mr. Malone's notes relating to Mr. Morgan, and Mr. Morgan's CIA file.  See **Exhibit C**.  Mr. Malone's notes are specifically requested as it is relevant whether Mr. Morgan was speaking to Mr. Malone and in what capacity the conversations occurred.

Ruben Oliva is a Florida attorney.  He is also the government witness who, upon information and belief, originally contacted the government concerning Segundo Villota-Segura and Aldemar Villota-Segura's allegations that form the basis of the government's charges against Defendant Balagia.  Defense investigation has revealed that Attorney Oliva has made similar claims against other attorneys in an effort to reduce his client's sentence.  Upon information and belief such actions by Attorney Oliva resulted in allegations being made against him in the Eastern District of New York.  Such allegations against Oliva and the results of the investigation in to those allegations are relevant to Defendant Balagia's defense, both in proving that making such unfounded allegations against attorneys is a common practice by Mr. Oliva and in determining Attorney Oliva's veracity as a witness.  Defendant Balagia has been unable to gain access to the records of the allegations against Attorney Oliva.  As such, those records were requested from the government.  See **Exhibit C**.

Like Ruben Oliva, attorney Nury Lopez is an attorney who often visited Segundo and Aldemar Villota-Segura.  See documents bates stamped Balagia 24302-24366 attached hereto as **Exhibit D**, and documents bates stamped Balagia 24488-24560 attached hereto as **Exhibit E**. Upon information and belief, allegations have been made against Attorney Lopez in both Dallas and Colombia that she used false pretenses to label her clients as members of FARC to prevent their extradition.  Defense counsel has been unable to procure records related to these

allegations, and requested them from the government's attorney. See **Exhibit C**. These documents are relevant as they go to the veracity of the witness and expected to include exculpatory evidence that the reason for the false allegations against Mr. Balagia are to support the witness's other false allegation of FARC membership.

Defendant is also requesting Henry Jack Pytel, Jr.'s informant file from whichever agencies he has worked with for the prior 20 years, whether such work was done as a confidential source, confidential informant, core collector or any other such role, and any of Mr. Malone's notes relating to Mr. Pytel. Mr. Pytel's information is necessary because he is involved with both Mr. Morgan and Mr. Malone. In fact, Mr. Malone has identified Mr. Pytel as participating in a meeting between Charles Morgan and Dave Malone. Defendant is unable to procure these records as they are controlled by the government. As such, defense counsel requested them from the government's attorney. See **Exhibit G**.

The government provided defense counsel with a list of records from La Pikota prison of those lawyers who visited Aldemar, Segundo and Hermes Casanova Ordonez. However, records of other persons including family, friend, legal assistant, investigator, etc. have not been provided. The people who visited these individuals may be defense witnesses, as they may be able to impeach statements made by Aldemar, Segundo and/or Hermes. As such, Defendant is entitled to their names. Defense counsel is unable to access any records from La Pikota prison. Therefore, official prison visit lists were requested from the government. See **Exhibit C**.

## LEGAL ARGUMENT

This Court should compel discovery in this matter pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), *Kyles v. Whitley*, 514 U.S. 419 (1995), their progeny, the Fifth and Sixth Amendments to the United States Constitution, and the Federal Rules of Criminal Procedure.

Defendant seeks only discovery that is relevant and material to his defense, and the Supreme Court has emphasized that broad disclosures "serve to justify that trust in the prosecutor as the representative . . . of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case but that justice shall be done." *Kyles*, 514 U.S. at 439 (ellipses in original; internal quotation marks omitted).

> The Federal Rules of Criminal Procedure provide that
>
> > [u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

*Fed. R. Crim. P.* 16(a)(1)(E).

It is believed that all of the information requested is exculpatory and subject to the disclosure pursuant to Brady and its progeny.

In addition, the discovery requested may include evidence that is not exculpatory but is material to Mr. Balagia's defenses. Evidence need not be exculpatory to be "material." *See United States v. Armstrong*, 517 U.S. 456, 462 (1996); *United States v. Stevens*, 985 F.2d 1175 (2d Cir.1993) (The Rule 16(a)(1)(E)(I) standard for materiality require that evidence can "be used to counter the government's case or to bolster a defense."); *United States v. Gamez-Orduno*, 235 F3d 453, 461 (9th Cir. 2000) (government's Brady obligation extends to materials that would be helpful to the accused "at trial or on a motion to suppress * * *."); *United States v. Barton*, 995 F.2d 931, 935 (9th Cir. 1993); *Smith v. Black*, 904 F.2d 950, 965-66 (5th Cir. 1990), vacated on other grounds, 503 US 930 (1992); *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975); *United States v. Pesaturo*, 519 F. Supp. 2d 177, 189 (D. Mass. 2007) (internal quotation

marks omitted); *see also United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.C. Cir. 1989) ("The language and the spirit of the Rule are designed to provide to a criminal defendant, in the interests of fairness, the widest possible opportunity to inspect and receive such materials in the possession of the government as may aid him in presenting his side of the case.") *United States v. Karake*, 281 F. Supp. 2d 302, 309 (D. D.C. 2003) (Evidence is "material" under Rule 16, "whether inculpatory or exculpatory, as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.") (quoting *United States v. Marshall*, 132 F. 3d 63, 68 (D.C. Cir. 1998)) (internal quotation marks omitted).

The evidence being requested by Defendant is material to his defense. It is evidence that may impeach a government witness, it is also evidence that could prove entrapment or that all of the allegedly illegal actions were done with government authority.

The government must disclose any evidence that may be used to impeach a government witness. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). As such, evidence of allegations made against Nury Lopez and/or Ruben Oliva must be disclosed to Defendant. Likewise, evidence that may be found in alleged co-conspirator Charles Morgan's Homeland Security Investigation file, specifically including any of Mr. Malone's notes relating to Mr. Morgan, Mr. Morgan's CIA file must be disclosed to Defendant for purposes of impeachment. Importantly, Defendant must be able to talk to witnesses from the La Pikota prison to determine whether they are able to impeach the statements made by the inmates.

Defendant Balagia denies committing any criminal activities. If a crime was committed, it was done so without his knowledge and would have been done by alleged co-conspirator Charles Morgan. It is Defendant Balagia's belief that Mr. Morgan was working with the United

States government or intended to provide information to the United States government concerning Mr. Balagia's clients. All actions taken by Mr. Balagia were done at the urging of Mr. Morgan. As such, Mr. Balagia is entitled to Mr. Morgan's CIA file and his Homeland Security Investigation file, as these files would prove Mr. Morgan's connection with the government. *See Sherman v. United States*, 356 U.S. 369, 372 (1958); *United States v. Hammond*, 598 F.2d 1008 (5th Cir. 1979), *remanded on other grounds*, 605 F.2d 862 (5th Cir.1979). U.S. v. Grassi, 616 F.2d 1295 (5th Cir., 1980). Further, if Mr. Morgan had authority from a government agent, such as Mr. Malone, to undertake the actions he took no crime could have been committed. Records of telephone calls between Mr. Malone and Mr. Morgan are relevant in determining whether any authorization was provided.

Likewise, defense investigation reveals that Henry Jack Pytel, Jr. was involved with Mr. Malone and Mr. Morgan with regard to this matter. Just as with Mr. Morgan, defense investigation revealed that Mr. Pytel has been involved working with the government. As such, Mr. Pytel's informant files, or the like, are relevant to Defendant Balagia's defense in this matter.

## CONCLUSION AND PRAYER

For the reasons set forth above, Mr. Balagia respectfully requests the Court to compel the government to provide the following material evidence:

1. Telephone records for Homeland Security Agent David Malone;
2. Charles Morgan's Homeland Security Investigation file, specifically including notes taken by David Malone;
3. Charles Morgan's CIA file;
4. Charles Morgan's FBI file, specifically including his activities related to COINROLL;

5. Records of allegations made against Ruben Oliva in the Eastern District of New York and the investigation of those allegations;

6. Records of allegations made against Nury Lopez in both Dallas, Texas and Colombia and the investigation of those allegations;

7. Henry Jack Pytel, Jr.'s informant file from whichever agencies he has worked with for the prior 20 years, whether such work was done as a confidential source, confidential informant, core collector or any other such role, and any of Mr. Malone's notes relating to Mr. Pytel;

8. Official La Pikota prison visit records for all visitors to Segundo Villota-Segura, Aldemar Villota-Segura and Hermes Casanova Ordonez. The government requested these records through both official and unofficial channels in approximately July 2018. An order compelling the production of the records is requested in order to assist the prosecutors in encouraging that the request receive priority.

    Respectfully submitted,

    /S/DAPHNE PATTISON SILVERMAN
    Daphne Pattison Silverman (TBN 06739550)
    Norman Silverman (TBN 00792207)
    Silverman Law Group
    501 N. IH-35
    Austin, TX 78702
    512-485-3003
    Fax: 512-597-1658
    daphnesilverman@gmail.com

## **CERTIFICATION BY DAPHNE SILVERMAN**

I am an attorney licensed to practice in the State of Texas.  I have been retained by Defendant James Balagia to represent him in this matter, and have been personally involved in the defense investigation.  I have personal knowledge of the facts set forth above regarding the defense investigation.  I hereby certify that those facts set forth herein are accurate and complete to the best of my knowledge.

/s/ Daphne Pattison Silverman<br>Daphne Pattison Silverman

**Certificate of Service**

     I certify that on November 6, 2018 this document was filed with the Clerk of the Court using the electronic case filing system that automatically sends notice of electronic filing to the attorneys of record who have consented to accept such service.

                                              /S/DAPHNE PATTISON SILVERMAN
                                              Daphne Pattison Silverman

**Certificate of Conference**

     I, Daphne Silverman, hereby certify that I conferred with counsel for the government regarding the discovery issues set forth in this motion, prior to filing this motion.  Counsel for the government requested that this motion be filed.

                                              /S/DAPHNE PATTISON SILVERMAN
                                              Daphne Pattison Silverman