
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

UNITED STATES OF AMERICA §
§
v. § No. 4:16CR176
§ Judge Crone
§
JAMES MORRIS BALAGIA (3) §
a.k.a. "DWI Dude" §

## FOURTH SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

At all times material to this Fourth Superseding Indictment:

### Introduction and General Allegations

1.    **James Morris Balagia aka "DWI Dude,"** was an attorney licensed in the State of Texas in 1992 and representing clients in criminal cases in state court and in the United States District Courts for the Eastern, Western, and Southern Districts of Texas as well as the Northern District of Alabama.    **Balagia** has represented defendants in approximately 84 federal criminal cases.    Among these cases, **Balagia** has represented defendants in approximately 40 serious federal drug cases;

2.    Bibiana Correa Perea aka "Bibi" was a Colombian attorney;

3.    Charles Norman Morgan aka "Chuck" was a private investigator from Stuart, Florida;

4.    *Drug Enforcement Administration Seizure of $50,000 in United States Currency,* DEA Case Number MB-12-0012, Asset ID Number 12-DEA-556315 was an

asset forfeiture matter related to seizure of suspected proceeds from narcotics trafficking on United States Interstate 40 on or about November 17, 2011;

5.  *United States v. Hermes Casanova Ordonez, a.k.a. "Megatron,"* Criminal Number 4:13cr38 was a drug trafficking case pending in the United States District Court for the Eastern District of Texas;

6.  *United States v. Segundo Villota-Segura,* Criminal Number 4:13cr38 was a drug trafficking case pending in the United States District Court for the Eastern District of Texas;

7.  *United States v. Aldemar Villota-Segura,* Criminal Number 4:13cr38 was a drug trafficking case pending in the United States District Court for the Eastern District of Texas;

8.  A common and well-accepted law enforcement technique is for the government to offer a member of a drug conspiracy the opportunity to cooperate with, and provide information to, the government, and this information is then used to investigate and prosecute other members of the conspiracy. No defendant must pay the government for the opportunity to cooperate. Rather, in exchange for a defendant's cooperation and truthful information, the government may request that the cooperating defendant receive a reduced sentence. Whether to follow the government's recommendation and reduce the sentence is in the sole discretion of the federal sentencing judge.

## Count One

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

Beginning in or about 2011, the exact date unknown to the Grand Jury, and continuing thereafter up to and including the date of the filing of this Fourth Superseding Indictment, in the Eastern District of Texas and elsewhere, **James Morris Balagia** a.k.a. "DWI Dude," the defendant herein, did knowingly, willfully and unlawfully conspire and agree together and with Charles Norman Morgan a.k.a. "Chuck," Bibiana Correa Perea a.k.a. "Bibi," HJP, and with other persons known and unknown to the Grand Jury, to:

(a) conduct and attempt to conduct financial transactions affecting interstate and foreign commerce and to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds represented by a law enforcement officer to be the proceeds of a specified unlawful activity to wit: distribution or conspiracy to distribute or possess with the intent to distribute a controlled substance or substances from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, believing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds and that while conducting and attempting to conduct such financial transactions, the defendant believed that the property involved in the financial transactions, that is, United States currency, represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §1956(a)(3);

(b) conduct and attempt to conduct financial transactions affecting interstate and foreign commerce and to transport, transmit, or transfer, or attempt to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States, which involved the proceeds of a specified unlawful activity, to wit: distribution or conspiracy to distribute or possess with the intent to distribute a controlled substance or substances knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds and that while conducting and attempting to conduct such financial transactions, the defendant knew that the property involved in the financial transactions, that is, United States currency, represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. §§1956(a)(1)(B)(i), (a)(2)(B)(i); and,

(c) engage, or attempt to engage, in a monetary transaction in an amount greater than $10,000 by, though, or to a financial institution with proceeds of a specified unlawful activity, that is, conspiracy to distribute or possess with the intent to distribute a controlled substance or substances in violation of 18 U.S.C. § 1957.

All in violation of 18 U.S.C. § 1956(h).

## Count Two

Violation: 18 U.S.C. § 1503 and 2
(Obstruction of Justice and Aiding and
Abetting)

Beginning in or about 2011, the exact date unknown to the Grand Jury, and continuing thereafter up to and including the date of the filing of this Fourth Superseding Indictment, in the Eastern District of Texas and elsewhere, **James Morris Balagia** a.k.a. "DWI Dude," defendant herein, aided and abetted by Charles Norman Morgan a.k.a. "Chuck," Bibiana Correa Perea a.k.a. "Bibi," HJP, and others known and unknown to the Grand Jury, did knowingly and intentionally corruptly endeavor to influence, obstruct and impede the due administration of justice and did corruptly endeavor to influence, obstruct and impede the due administration of justice in *United States v. Hermes Casanova Ordonez, a.k.a. "Megatron," United States v. Segundo Villota-Segura* and *United States v. Aldemar Villota-Segura* all cases in the Eastern District of Texas by, among other acts, undermining the functioning of the federal justice system by informing Hermes Casanova Ordonez, a.k.a. "Megatron," Segundo Villota-Segura and Aldemar Villota-Segura and that the defendant and others could corruptly influence government officials in relation to criminal charges, which conduct hampered further cooperation by said Hermes Casanova Ordonez, a.k.a. "Megatron," Segundo Villota-Segura and Aldemar Villota-Segura and also affected ongoing criminal investigations in the Eastern District of Texas and elsewhere.

In violation of 18 U.S.C. §§ 1503, 1512(h) and (i) and 2.

## Count Three

Violation: 21 U.S.C. § 1904(c)(2)
(Violation, Endeavor, and Attempt
to Violate the Kingpin Act)

All prior allegations are re-alleged and incorporated by reference as though fully set forth herein.

Beginning in or about 2014, and continuing through on or about March 9, 2017, the exact dates being unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, the defendant **James Morris Balagia** a.k.a. "DWI Dude," a United States person, did engage in transactions and dealings, including dealings within the United States, which evaded, avoided, endeavored, and attempted to commit violations of the Kingpin Act, in violation of Title 21, United States Code, Sections 1906(a), 1904(b)(4), (c)(1) and (c)(2).

### Allegations

The Kingpin Act (21 U.S.C. §§ 1901-1908), provides authority for the application of sanctions to significant foreign narcotics traffickers and their organizations operating worldwide.

The Office of Foreign Assets Control (OFAC) of the United Stated Department of Treasury administers and enforces economic sanctions programs against narcotics traffickers. As a part of the sanctions program, the names of persons and entities designated pursuant to the Kingpin Act, whose property and interests in property are blocked, are

published in the Federal Register and incorporated into a list of Specially Designated Nationals (SDN List) with the OFAC program tag "[SDNTK]" to designate Specially Designated Nationals who are narcotics traffickers. The SDN List is readily available through OFAC's web site: http://www.treasury.gov/sdn.

On February 19, 2014, OFAC designated the following foreign individuals as specially designated narcotics traffickers (using the program tag SDNTK) under the Kingpin Act: (1) Aldemar Villota Segura; (2) Segundo Villota Segura; and, (3) Hermes Casanova Ordonez, a.k.a. "Megatron." Aldemar Villota Segura, Segundo Villota Segura, and Hermes Casanova Ordonez have appeared on the publicly available list from February 19, 2014 until the date of this Fourth Superseding Indictment.

Unless otherwise authorized or exempt, transactions by U.S. persons, or in or involving the United States, are prohibited if they involve transferring, paying, exporting, withdrawing, or otherwise dealing in the property or interests in property of an entity or individual listed on the SDN List.

OFAC may authorize certain types of activities and transactions, which would otherwise be prohibited, by issuing a general license. General licenses may be published in the regulations, on OFAC's Web site, or both. For example, the provision of certain legal services to or on behalf of persons whose property and interests in property are blocked pursuant to the Kingpin Act is authorized, provided that all receipts of payment of professional fees and reimbursement of incurred expenses must be specifically licensed.

**James Morris Balagia** a.k.a. "DWI Dude," has never applied for or received an OFAC license necessary to receive property from any individual listed on the SDN List.

**James Morris Balagia** a.k.a. "DWI Dude," is a United States person and was an officer, director, and agent of the Law Offices of Jamie Balagia, which is an entity as defined in 21 U.S.C. § 1907(1).

In or about July 2014 Hermes Casanova Ordonez agreed to pay **James Morris Balagia** a.k.a. "DWI Dude," for legal representation relating to a pending federal indictment against Hermes Casanova Ordonez in the Eastern District of Texas. Hermes Casanova Ordonez working in concert with others, transferred United States currency to **James Morris Balagia** a.k.a. "DWI Dude," a United States person. Some part of the payments were made within the United States.. **James Morris Balagia** a.k.a. "DWI Dude," endeavored, attempted, and did engage in such transactions that evaded, avoided, and had the effect of evading and avoiding the prohibitions of the Kingpin Act.

In or about August 2014 Segundo Villota Segura agreed to pay **James Morris Balagia** a.k.a. "DWI Dude," for legal representation relating to a pending federal indictment against Segundo Villota Segura in the Eastern District of Texas. Segundo Villota Segura, working in concert with others, transferred United States currency to **James Morris Balagia** a.k.a. "DWI Dude," a United States Person. Some part of the payments were made within the United States. **James Morris Balagia** a.k.a. "DWI Dude," endeavored, attempted, and did engage in such transactions that evaded, avoided, and had the effect of evading and avoiding the prohibitions of the Kingpin Act.

In or about September 2016 **James Morris Balagia** a.k.a. "DWI Dude," agreed to accept payment from Aldemar Villota Segura for legal representation relating to a pending federal indictment against Aldemar Villota Segura in the Eastern District of Texas. James Morris Balagia a.k.a. "DWI Dude," endeavored, and attempted to engage in such transactions that evaded, avoided, and had the effect of evading and avoiding the prohibitions of the Kingpin Act.

All in violation of Title 21, United States Code, Section 1904(c)(2).

### Count Four

> Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1343)

### A. Introduction

The Grand Jury adopts, realleges and incorporates herein the Introduction section of the Fourth Superseding Indictment.

### B. The Conspiracy

From in or about 2011, the exact date unknown to the Grand Jury, and continuing thereafter up to and including the date of the filing of this Fourth Superseding Indictment, in the Eastern District of Texas and elsewhere, **James Morris Balagia** a.k.a. "DWI Dude," the defendant herein, did knowingly combine, conspire and agree together and with Charles Norman Morgan a.k.a. "Chuck," Bibiana Correa Perea a.k.a. "Bibi," HJP, and with other persons known and unknown to the Grand Jury, to devise a scheme and artifice to defraud and to obtain money and funds from criminal defendants charged in the Eastern District of

Texas and elsewhere by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, caused writings, signs, and signals to be transmitted by means of wire communication in interstate and foreign commerce, a violation of 18 U.S.C. § 1343.

## C. The Manner and Means of the Conspiracy and the Scheme and Artifice

It was a part of the conspiracy and the scheme and artifice that:

It was part of the conspiracy that **Balagia** and others concocted a scheme to defraud individuals who were facing federal criminal charges.

It was part of the conspiracy that **Balagia** and others concocted a scheme to convince a prospective client that he had the ability to influence judges and prosecutors in her criminal case and, in the course of representing her, to fraudulently recover narcotics proceeds which had been seized by the Drug Enforcement Administration in her case.

**Balagia** and others would solicit federal criminal defendants (including Hermes Casanova Ordonez, Segundo Villota Segura, and Aldemar Villota Segura) as clients under false pretenses. **Balagia** and others claimed to the defendants that they had contacts who had the power to affect their criminal charges if the defendants would pay a large sum of money.

**Balagia** and others made misrepresentations to the defendants about their ability to affect the outcome of the defendants' cases and the nature and extent of their alleged government contacts.

**Balagia** and others did falsely state that government officials could be and were being bribed on behalf of the defendants with the funds the defendants would or did pay.

**Balagia** and others, in order to execute the scheme and artifice, caused writings, signs, and signals to be transmitted by means of wire communications in interstate and foreign commerce, to wit: phone calls, electronic mail transmissions and other wire communications in order to schedule meetings, discuss the scheme, transmit money, and file court documents.

### D. Representative Acts of the Conspiracy

On or about the following dates, as acts representative of the conspiracy, the defendant and other co-conspirators caused the following acts to be committed:

In or about November 2011, **Balagia** and HJP spoke with **Balagia**'s client, JMM and convinced her that they had connections with judges and prosecutors which they could use to effect a favorable resolution of her case after she had been pulled over with approximately $50,000 which was being transported for the purpose of purchasing marijuana. On or about September 7, 2012, HJP, working in concert with **Balagia**, caused writings, signs, and signals to be transmitted by means of wire communications in interstate and foreign commerce, to wit: fax transmissions in order to discuss the scheme to fraudulently recover narcotics proceeds seized by the Drug Enforcement Administration.

On or about September 13, 2014, in advance of a September 18, 2014 meeting in Colombia which was scheduled in an effort to retain Hermes Casanova Alirio Ordonez ("Megatron") as a client for the Law Offices of Jamie Balagia and in furtherance of the

conspiracy, **Balagia** placed a telephone call to the Stuart, Florida landline telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about September 26, 2014, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the Stuart, Florida landline telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about September 28, 2014, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the Stuart, Florida landline telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about September 30, 2014, a deposit was made into Wells Fargo Bank account of **Balagia**. The deposit was made in New York City, New York and represented money received by **Balagia** as a result of the fraud conspiracy.

On or about December 12, 2014, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the cellular telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about December 12, 2014, **Balagia** and June Gonzales traveled to Houston, Texas to pick up cash which was payment for Megatron's case. As a result of this cash pickup, **Balagia** deposited approximately $126,300 into the law office Wells Fargo Bank account and approximately $78,000 into the law office Independent Bank account.

On or about November 14, 2015, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the cellular telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about December 21, 2015, **Balagia** attended a meeting with Charles Norman Morgan, Adriana Morgan, Bibiana Correa Perea and Segundo Villota-Segura which took place at La Picota Prison in Bogota, Colombia.

On or about January 25, 2016, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the cellular telephone of Charles Norman Morgan, in and affecting interstate commerce.

On or about February 18, 2016, and in furtherance of the conspiracy, Charles Norman Morgan and Adriana Morgan, met with Segundo Villota-Segura at La Picota, Prison in Bogota, Colombia.

On or about April 25, 2016, and in furtherance of the conspiracy, **Balagia** placed a telephone call to the cellular telephone of Charles Norman Morgan, in and affecting interstate commerce.

In violation of 18 U.S.C. § 1349.

### Count Five

Violation: 18 U.S.C. § 371
(Conspiracy to Obstruct Justice)

**A. Introduction**

The Grand Jury adopts, realleges and incorporates herein the Introduction section of the Fourth Superseding Indictment.

**B. The Conspiracy**

From in or about 2011, the exact date unknown to the Grand Jury, and continuing thereafter up to and including the date of the filing of this Fourth Superseding Indictment, in the Eastern District of Texas and elsewhere, **James Morris Balagia** a.k.a. "DWI Dude," the defendant herein, did knowingly combine, conspire and agree together and with Charles Norman Morgan a.k.a. "Chuck," Bibiana Correa Perea a.k.a. "Bibi," HJP, and with other persons known and unknown to the Grand Jury, to commit the following offense against the United States: to corruptly endeavor to influence, obstruct and impede the due administration of justice, in violation of Title 18, United States Code, Section 1503 (obstruction of justice).

### C. Manner and Means of the Conspiracy

It was part of the conspiracy that **Balagia** and others concocted schemes to defraud individuals who were involved in the criminal justice system and/or facing federal criminal charges.

**Balagia** and others made representations to law enforcement, government officials and others that resulted in seized funds being released to **Balagia**.

**Balagia** and others solicited federal criminal defendants as clients under false pretenses. **Balagia** and others claimed to the defendants that they had contacts who had the power to affect their criminal charges if the defendants would pay a large sum of money.

**Balagia** and others made misrepresentations to the defendants about their ability to affect the outcome of the defendants' cases and the nature and extent of their alleged government contacts.

**Balagia** and others did falsely state that government officials could be and were being bribed on behalf of the defendants with the funds the defendants would or did pay.

**Balagia** and others would and did undermine the functioning of the United States system of justice by, among other things, interfering with the rightful ownership and return of seized currency; interfering with defendants' cooperation with the government; interfering with plea negotiations with the government by preventing the defendant from timely entering pleas because of the mistaken belief their case was going to be dismissed; interfering with defendants' relationships with former and subsequent counsel.

### D. Overt Acts

As examples, the following overt acts, among others, were committed in furtherance of the conspiracy and to effect the objects of the conspiracy:

On or about November 17, 2011, on United States Interstate 40, law enforcement officers seized $50,000 in United States Currency from JMM. This became DEA Case Number MB-12-0012, Asset ID Number 12-DEA-556315. **Balagia** and others told JMM that **Balagia** had connections with judges and prosecutors which he could use to influence the outcome of her case. In the course of his representation of JMM, **Balagia** knowingly sponsored JMM's misrepresentations to the Drug Enforcement Administration concerning the source and nature of the money and received a portion of the seized funds;

On or about February 10, 2012, **Balagia** transmitted to the Drug Enforcement Administration a sworn statement of his client, JMM, known by **Balagia** to be false, in an effort to recover the funds held by the Drug Enforcement Administration.

On or about December 21, 2015, **Balagia** and others met with Segundo Villota-Segura who was charged in *United States v. Segundo Villota-Segura,* Criminal Number 4:13cr38 which was a drug trafficking case pending in the United States District Court for the Eastern District of Texas. At this meeting, it was represented to Segundo Villota-Segura that four people in Washington, D.C. were paid (bribed) with Segundo Villota-Segura's money to assist him with the federal charges he had pending in the Eastern District of Texas. Segundo Villota-Segura was told that the names of the people would not be exposed. **Balagia** told Segundo Villota-Segura to deal with "Bibi and Chuck" because it gave **Balagia** the "ability to close my ears sometimes if I need to- and it protects- all of us."

## NOTICE OF INTENTION TO SEEK CRIMINAL FORFEITURE

Criminal Forfeiture Pursuant to 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(c) by 28 U.S.C. § 2461

As a result of committing the offenses charged in this Fourth Superseding Indictment, the defendant shall forfeit to the United States any property, real or personal, involved in a violation of 18 U.S.C. § 1956(h), or any property traceable to such property, and any property, real or personal, which constitutes or is derived from

proceeds traceable to a violation of 18 U.S.C. § 1503, including, but not limited to, the

following:

**Cash Proceeds**:

Approximately $1,500,000.00 in proceeds in that such sum in aggregate is

property constituting, or derived from, proceeds obtained directly or indirectly, as the

result of the offenses alleged in this Fourth Superseding Indictment.

**Real Property**:

PROPERTY 1
Property Address: 15612 Littig Road, Manor, Texas 78653
Legal Description: Abstract 154, Survey 52, Caldwell A.C. Acres 1.59
County: Travis
Parcel Number: 442432

PROPERTY 2

Property Address: 310 Murray Avenue, Manor, Texas 78653
Legal Description: Lot 6 and 7, Block 2 A.E. Lane Addition to the City of Manor,
Travis County, Texas

**Financial Instruments**:

$18,486.09 in funds from bank account number xxxxx7167, in the name of Law
Office of Jamie Balagia, P.C. at Wells Fargo Bank, Frisco, Texas;

$999.93 in funds from bank account number xxxxx6904, in the name of Warhorse
Marketing Corp. at Wells Fargo Bank, Frisco, Texas;

$2,700.00 in funds from bank account number xxxxx3409, in the name of James
M. Balagia at Wells Fargo Bank, Frisco, Texas;

$14,885.57 in funds from bank account number xxxxx1145 and $297.47 in funds from bank account number xxxxx6255, in the name of Law Office of Jamie Balagia, P.C at Independent Bank, McKinney, Texas; and

$1,602.87 in funds from bank account number xxxxx9093, in the name of Jamie Balagia Law Office, P.C. at Independent Bank, McKinney, Texas.

All such proceeds and/or instrumentalities are subject to forfeiture by the government.

## Substitute Assets

Moreover, if, as a result of any act or omission of any defendant, any property subject to forfeiture:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with a third person;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be subdivided without difficulty;

The United States intends to seek forfeiture of any other property of the defendant up to the value of the forfeitable property, including but not limited to all property, both real and personal owned by the defendant. As a result of the commission of the offenses alleged in this Fourth Superseding Indictment, any and all interest that the defendant has in any such property is vested in and forfeited to the United States.

A TRUE BILL

_____
GRAND JURY FOREPERSON

JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____
HEATHER HARRIS RATTAN
Assistant United States Attorney

1-9-19
_____
Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:16CR176 |
| | § | Judge Crone |
| | § | |
| JAMES MORRIS BALAGIA (3) | § | |
| a.k.a. "DWI Dude" | § | |

## **NOTICE OF PENALTY**

### **Count One**

Violation:            18 U.S.C. § 1956(h)

Penalty:             Imprisonment for not more than twenty (20) years, a fine not to exceed $500,000.00 or twice the value of the property involved in the transaction, whichever is greater, or both. A term of supervised release of at least three (3) years.

Special Assessment:   $100.00

### **Count Two**

Violation:            18 U.S.C. §§ 1503 and 2

Penalty:             Imprisonment for not more than ten (10) years, a fine not to exceed $250,000.00 or twice the value of the property involved in the transaction, whichever is greater, or both. A term of supervised release of not more than three (3) years.

Special Assessment:   $100.00

### **Count Three**

Violation:            21 U.S.C. § 1904(c)(2)

Penalty:             Imprisonment for up to ten (10) years, a fine up to $250,000.00. If the defendant is a corporate officer, up to 30

years of imprisonment, a fine up to $5,000,000.00. A term of supervised release of not more than three (3) years.

Special Assessment:    $100.00

## Count Four

Violation:    18 U.S.C. § 1349

Penalty:    Imprisonment for not more than twenty (20) years, a fine not to exceed $250,000.00. A term of supervised release of not more than three (3) years.

Special Assessment:    $100.00

## Count Five

Violation:    18 U.S.C. § 371

Penalty:    Imprisonment for a term of not more than five years; a fine not to exceed $250,000.00; and supervised release of not more than three years.

Special Assessment:    $100.00