IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:16CR176 |
| | § | Judge Crone |
| JAMES MORRIS BALAGIA | § | **Filed Under Seal** |
| a.k.a. "DWI Dude" | § | |

## GOVERNMENT'S RESPONSE TO COURT ORDER (Docket #235)

On January 11, 2019, the Government filed a trial brief (Docket #234) describing multiple theories of admissibility concerning Defendant Balagia's misconduct with another co-conspirator in the instant conspiracy (an unindicted individual identified here as "HJP"). On January 14, 2019, the Court issued an order (Docket #235) seeking answers to certain questions relating to the Government's earlier filing. The Government herein files this, its response to the Court's questions.

**I. Court Question #1: What relationship, if any, does Balagia's representation of MN have to the offenses charged?**

The Government expects that the evidence will show that Balagia did not represent MN. Rather, Balagia represented MN's girlfriend (JMM) and her daughter. However, the crimes that Balagia committed in the representation of JMM and her daughter relate to the crimes committed in the representation of the Colombian defendants in EDTX case 4:13CR38 in the following respects. First, the scheme employed by Balagia is nearly identical in both cases. Second, HJP is a significant participant along with Balagia in both schemes. Third, Balagia's pretrial filings raise the same defenses, claiming ignorance of the conduct of Morgan and HJP as they provided services to Balagia's clients.

1

## A. Nearly Identical Schemes.

The scheme perpetrated by Balagia and his co-conspirators (HJP and Charles Norman Morgan) against the Colombian defendants in EDTX cause number 4:13CR38 is practically identical in many respects to the scheme that he and HJP perpetrated against their client JMM. There are key similarities:

- First, in both cases Balagia represented to his clients that he had law enforcement, prosecutorial, and/or judicial connections that could be leveraged to dispose of the charges against the defendants in each case.

- Second, in both cases the defendants were arrested for serious crimes related to drug smuggling and the defendants were faced with answering for these crimes in a location very remote from their homes (the 4:13CR38 defendants were being charged in North Texas but were residents of Colombia and JMM was being charged in West Texas but was a resident of Florida). Thus, the defendants in each case were uniquely vulnerable because they had little way to find out through friends, relatives, or trusted associates if the representations that Balagia and his co-conspirators were telling them were true.

- Third, in each case involved a direct effort at misrepresentation to federal authorities by Balagia in an effort to retain his ill-gotten gains. In the MN/JMM case, Balagia knowingly submitted false affidavits to the DEA in an effort to recover otherwise forfeitable drug proceeds. In the 4:13CR38 case, Balagia failed to file an IRS form 8300 for the receipt of over $10,000 in cash and further failed to report the receipt of legal fees from drug proceeds on his federal income taxes thereby concealing them from proper authorities.

## B. HJP is an Overlapping Figure in Both Conspiracies.

HJP was a key figure in the scheme to defraud both JMM and the federal government in JMM's case. HJP is described by both JMM and Balagia (in a letter Balagia sent to the State Bar of Texas and in his pretrial filings in this case) as an employee of Balagia. Moreover, HJP is a key figure in the upcoming trial because the evidence at trial is expected to show that HJP is a long-time associate of Charles Norman Morgan, Balagia's

co-defendant and co-conspirator. In fact, the evidence is expected to show that HJP introduced Balagia and Charles Norman Morgan.

### C. Defense Filings Indicate that Balagia Raises Nearly Identical Defenses With Respect to both HJP and Charles Norman Morgan.

In addition to the factual similarities relating to the schemes employed by Balagia, the defenses that Balagia raises in pretrial motions (and is therefore expected to raise at trial) in each case show the relation.

1. **Balagia filing reveals defense as to Charles Norman Morgan.**

Defendant Balagia denies committing any criminal activities. **If a crime was committed, it was done so without his knowledge and would have been done by alleged co-conspirator Charles Morgan. . . . All actions taken by Mr. Balagia were done at the urging of Mr. Morgan**." *Balagia Motion to Compel,* Docket #200, pgs. 7-8 (emphasis added).

2. **Balagia filing reveals same defense as to HJP.**

"[A]lthough HJP was working for Mr. Balagia at the time of the alleged conduct, there was no conspiracy. HJP was assigned to that matter and others, as each person in the firm was assigned to different cases. **In his position with Mr. Balagia's law firm, HJP had access to Mr. Balagia's name stamp, would sign Mr. Balagia's name on documents, and would speak to clients independently, without direct supervision** because he was previously an attorney and understood the law. **Unfortunately, Mr. Balagia trusted HJP and that trust was misplaced.** Significantly, HJP has already shown a proclivity to be untruthful. He was convicted of bribery and sentenced to prison." *Balagia Motion for James Hearing,* Docket #242, pgs. 4-5. (emphasis added).

In other words, Balagia is asserting the same defense as to HJP as he is toward his co-conspirator and co-defendant in the instant case, Charles Norman Morgan. Namely, Balagia indicates that, if crimes were committed by his employees HJP and Morgan as they undertook efforts on behalf of Balagia, they were done without his knowledge.

**II. Court Question #2: What was stated in JMM's affidavit and what evidence does the Government have that the statement(s) were false?**

JMM's affidavit falsely states: "I am the innocent owner of the subject personal property described as $50,000.00 U.S. Currency under Asset ID 12-DEA-556315. The subject property is not in violation of the law." JMM's ownership *was not innocent* and *it was in violation of law* in that she was engaged in a marijuana trafficking enterprise and that money was payment for marijuana. Balagia's own signed statement to the State Bar of Texas admitted that he knew that the money was intended for the purchase of marijuana and that he did not believe that JMM was the owner of the funds (see detailed answer to question 4 below). Thus, when Balagia submitted JMM's affidavit to the DEA, he knew that it was false because he knew that JMM was not the "innocent owner" and that the funds were in violation of law.

**III. Court Question #3: What are the contents of JMM's anticipated testimony and how is it corroborated by the affidavit?**

JMM falsely claimed that she was the innocent owner of the funds and that the funds were not in violation of law in an affidavit prepared by Balagia or under his direction. The falsity of JMM's affidavit is corroborated by the signed statement that Balagia submitted to the State Bar of Texas in response to JMM's complaint to the State Bar. Moreover, JMM was led to believe by Balagia and his employee HJP that Balagia had the ability to influence prosecutors and judges in her case.

**IV. Court Question #4: What did Balagia tell the State Bar of Texas in his letter, how does it contradict what he told the DEA, and what is the letter's relationship to JMM's affidavit?**

Balagia filed a claim with the DEA seeking the return of the money seized from JMM. In doing so, Balagia forwarded JMM's affidavit (which falsely claimed that she was the innocent owner of the seized money). In contrast, Balagia sent a letter to the State Bar of Texas claiming that the money was being used to purchase marijuana (thus negating the claim that the money was not in violation of law) and that JMM was not the owner of the money (thus negating the claim that JMM was the innocent owner). A portion of Balagia's letter is quoted below (with alternations to substitute initials for the names of un-indicted co-conspirators in the enterprise to defraud the federal government).

> I started representing [MN] after his brother was arrested in Kerr County, Texas for money laundering. [MN] hired me to represent his brother in the Kerr County matter in which [MN] lost $100,000.00 cash, which was seized and forfeited in that case. It is my understanding that due to his brother's arrest**, [MN] utilized [JMM] and [JMM's Daughter] to transport money to the west coast to purchase marijuana and then transport the marijuana back to Florida or South Carolina to sell. [MN] contacted me and said that [JMM] and [JMM's daughter] were arrested in Carson City, Texas en route "West" to pick up a load.** [MN] said they had been stopped for speeding. The police had found his money during the search of the van they were driving. Both [JMM] and [JMM's daughter] were charged with Money Laundering (Third Degree Felony). [MN] told me that it was a priority to get the charges against [JMM] and [JMM's daughter] dismissed at all costs due to his relationship with [JMM] (boyfriend/girlfriend).
> …
>
> In June I received the letter from the U.S. Department of Justice that they had agreed to return the $50,000.00. On July 24th the Power of Attorneys were sent to [JMM's daughter] and [JMM] to sign so that we could obtain the wire transfers of the seized money into my bank account per [MN]'s instructions. The Durable Powers of Attorneys that were signed by both [JMM] and [JMM's daughter] clearly state that they were giving me the power to collect the sums seized in the arrest. **This was done because both [JMM] and [JMM's daughter] had revealed that the money was [MN]'s and that they were merely "in possession" of his money for the sole purpose of purchasing marijuana.**

Jaime Balagia Letter to State Bar of Texas, Pgs. 1 and 3 (emphasis added).

## **CONCLUSION**

5

The United States urges this Court to admit the evidence as intrinsic to the offense charged or, alternatively, as evidence of an extraneous act which is relevant to prove motive, opportunity, intent, preparation, plan, knowledge, identity, as well as an absence of mistake or accident.

Respectfully submitted,

JOSEPH D. BROWN
United States Attorney

/s/_____
JAY R. COMBS
Assistant United States Attorney
101 East Park Blvd., Suite 500
Plano, Texas 75074
Telephone: 972/509-1201
Facsimile: 972/509-1209
Jay.combs@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via electronic filing to defense counsel on March 8, 2019.

/s/_____
JAY R. COMBS