IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:16CR176 |
| | § | Judge Mazzant |
| JAMES MORRIS BALAGIA (3) | § | |
| a.k.a. "DWI Dude" | § | |

# RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL

In his Second Motion to Compel (Dkt. 266), the defendant makes thirteen additional discovery requests. The United States lists the defendant's thirteen additional discovery requests below and responds to each:

**1. With regard to OFAC documents designating the underlying drug traffickers under the kingpin act- all documents showing or listing all accounts seized from the persons listed in the indictment pursuant to 21 U.S.C. 1904. Any pre-seizure or post-seizure notice that the government provided to these persons reflecting that they had been designated. The original executive orders affecting the designation together with the factual basis upon which the decision to designate was based.**

The defendant requests Office of Foreign Asset Control (OFAC) documents related to the designation of the drug traffickers. As noted in count three of the Fourth Superseding Indictment (Dkt. 232), The Kingpin Act (21 U.S.C. §§ 1901-1908) provides authority for the application of sanctions to significant foreign narcotics traffickers and their organizations operating worldwide. OFAC is part of the United States Department of Treasury and it administers and enforces economic sanctions programs against narcotics

traffickers. The names of persons and entities designated pursuant to the Kingpin Act are published in the Federal Register and incorporated into a list of Specially Designated Nationals (SDN List) with the OFAC program tag "[SDNTK]" to designate Specially Designated nationals who are narcotics traffickers. The SDN List is available through OFAC's web site: http://www.treasury.gov/sdn.

On February 19, 2014, OFAC designated the following individuals under the Kingpin Act: (1) Aldemar Villota Segura; (2) Segundo Villota Segura; and (3) Hermes Casanova Ordonez, a.k.a. "Megatron." All three are on the publicaly available list. Any documents supporting the Kingpin OFAC designation are not relevant because the designation is not subject to collateral attack.

A criminal defendant may not collaterally attack an administrative designation at trial, "since the validity of the designation is not an element of the crime. Rather, the element is the fact of an organization's designation …[.]" *See United States v. Afshari1*, 426 F.3d 1150, 1159 (9th Cir. 2005) (emphasis in original). *See also, e.g., United States v. Hammoud*, 381 F.3d 316, 331 (4th Cir. 2004), cert. granted, judgment vacated, 543 U.S. 1097 (2005), and opinion reinstated in part, 405 F.3d 1034 (4th Cir. 2005) (rejecting the defendant's request to challenge Hizballah's designation as a Foreign Terrorist Organization ("FTO") reasoning that the designation itself, not its validity, was the relevant element of the crime*); Scarbeck v. United States*, 317 F.2d 546, 558–59 (D.C. Cir. 1962) (rejecting defendant's assertion that, in a prosecution for disclosure of classified

information, the defendant should be allowed to challenge whether the documents at issue were properly classified); *Lewis v. United States,* 445 U.S. 55, 62–63 (1980) (refusing defendant's request to attack the validity of a prior felony conviction at a trial on a charge of felon in possession of a firearm); *United States v. Taleb-Jedi*, 566 F. Supp. 2d 157, 172 (E.D.N.Y. 2008) (rejecting a request to challenge the designation of an FTO at trial, stating "the only element here that the Government needs to prove is that the [organization at issue] was designated as an FTO during the time period covered in the Indictment."); *United States v. Mandel*, 914 F.2d 1215, 1222 (9th Cir. 1990) (holding that a criminal defendant could not collaterally attack the Secretary of Commerce's decision to place an item on the Commodity Control List and declining defendant's discovery request for information underlying the determination); *United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir. 1979) (holding that, when prosecuting someone for disclosing classified information, "… the propriety of the classification is irrelevant. The fact of classification of a document or documents is enough to satisfy the classification element of the offense."); *United States v. Marzook*, 383 F. Supp. 2d 1056, 1072 (N.D. Ill. 2005) (holding that a defendant in a material support case cannot collaterally attack an organization's FTO status because the validity of the FTO designation is not an element of the offense); *United States v. Sattar*, 272 F. Supp. 2d 348, 368 (S.D.N.Y. 2003) (holding that in a case involving material support for a designated Foreign Terrorist Organization ("FTO"), "the correctness of the designation itself is not an element of the offense ...."); *United States v. Al-Arian*,

**Response to Defendant's Second Motion to Compel – Page 3**

308 F. Supp. 2d 1322, 1344 (M.D. Fla. 2004) (holding that the defendants in a material support case could not collaterally attack the Palestinian Islamic Jihad-Shiqaqi Faction's FTO or SDGT status); *Yakus v. United States*, 321 U.S. 414, 447, 64 S. Ct. 660, 678, 88 L. Ed. 834 (1944) (holding that the defendant could not collaterally attack the validity of the Emergency Price Control Act price regulations that the government accused him of violating).

*See also, United States v. Chichakli*, No. 1:09-cr-01002-WHP (S.D.N.Y. Nov. 18, 2013) at 9 (finding that a defendant may not relitigate his designation by OFAC in a criminal trial in which he was charged with violating IEEPA as a result of that designation). *See also United States. v. Hicks*, 389 F.3d 514, 534-35 (5th Cir. 2004) (defendant could not collaterally attack validity of a state-court protective order); *United States v. Chambers,* 922 F.2d 228, 232 (5th Cir. 1991) (invalidation of prior indictment not grounds to reverse conviction based on the defendant falsely stating he was not under indictment before indictment was invalidated).

In other words, the defendant may not re-litigate in this case whether the above three individuals should have received the Kingpin OFAC designation. The defendant has not presented the Court with any authority supporting discovery of any OFAC information. Further, as is discussed more fully in Section 4A below, this request does not fit in any accepted category of criminal discovery. The United States urges the Court to deny this request.

2. **All OFAC licenses obtained by any lawyers in order to represent any of the drug traffickers in the underlying drug case that has resulted in this prosecution. The underlying drug case is *U.S. v. Fernain Rodriguez-Vasquez*, Case No. 4:13cr38.**

The defendant requests OFAC licenses of other lawyers involved in Eastern District of Texas (EDTX) cause number 4:13CR38. Transactions by U.S. persons with individuals listed on the SDN list are prohibited unless they are authorized or exempt. However, OFAC may issue a general license which would authorize certain types of transactions (like the provision of certain legal services). Count Three of the Fourth Superseding Indictment charges that the defendant accepted money from OFAC designated defendants without obtaining a license.

In this discovery request, the defendant requests the OFAC licenses of other lawyers involved in EDTX cause number 4:13CR38. The defendant has not demonstrated how the licenses of other lawyers would be relevant. The names and contact information for the lawyers involved in cause number 4:13CR38 are listed publicly on PACER. The defendant has subpoena authority and can obtain these licenses from the lawyers. Finally, as is discussed more fully in Section 4 A and B below, this request does not fit in any accepted category of criminal discovery. The United States urges the Court to deny this request.

3. **Any documents that reflect the request for and approval for authorization for Colombian attorney Nury Lopez or any other person to record the attorney client interview in La Picota prison in Colombia that has been provided to the defense through discovery. This dispute includes documents of approval from the Colombian authorities,**

**documents of approval from the United States Department of Justice (USDOJ), and documents of approval from any United States court.**

The defendant requests documents showing approval or authorization to record a December 21, 2015 meeting at La Picota Prison in Colombia. The December 21, 2015 audio/ video recording will be offered as evidence in the United States' case in chief. Colombian drug trafficking defendant Segundo Villota-Segura (charged in EDTX cause number 4:13CR38), the defendant and the defendant's co-conspirators (Charles Norman Morgan, Adriana Morgan and Bibiana Correa Perea) were all present and recorded at the meeting. The defendant is not entitled approval/ authorization information because: (1) no approvals or authorizations were required because the recording was made by and at the direction of Segundo Villota-Segura and neither the United States nor the Colombian governments were involved in the recording; and (2) even if there were an approval/ authorization process, it would not be discoverable because a policy does not create a substantive right for a defendant.

The Government has previously provided briefing to this Court in response to a prior motion of the Defendant, noting that internal Department of Justice rules do not create enforceable rights for criminal defendants. *United States v. Cooks*, 589 F.3d 173, 184 (5th Cir. 2009); *See also United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) ("[I]t is clear that the USAM does not create any substantive or procedural rights.... The USAM explicitly states that '[t]he Manual provides only internal Department of

Justice guidance. It is not intended to, does not, and may not be relied upon to [,] create any rights, substantive or procedural, enforceable at law by any party in any manner civil or criminal.' ") (quoting USAM 1-1.100); *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C. Cir. 1999); *United States v. Myers*, 123 F.3d 350, 356 (6th Cir, 1997); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir. 1994); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir. 1990).

Consequently, the defendant has not and cannot establish that any approval/authorization documents would be relevant and discoverable. Finally, as is discussed more fully in Section 4 A and B below, this request does not fit in any accepted category of criminal discovery. The United States urges the Court to deny this request.

**4. Any documents that reflect the request for and approval for authorization for the Collin County Sheriff or any other person to record the attorney client interview between an underlying drug trafficking defendant and James Balagia in Collin County jail. This dispute includes documents of approval from the United States Department of Justice (USDOJ) and documents of approval from any United States court or state court within the United States.**

The defendant requests documents showing approval or authorization to record a meeting at the Collin County Jail between Colombian drug trafficking defendant Aldemar Villota-Segura (charged in EDTX cause number 4:13CR38) and the defendant. On November 2, 2016, the defendant and the defendant's co-conspirators (Charles Norman Morgan and June Gonzalez) met with Aldemar Villota-Segura at the Collin County Jail. Aldemar Villota-Segura was cooperating with the United States and consented to the audio/

video recording of the meeting that was made by the Federal Bureau of Investigation. The recording will be offered as evidence in the United States' case in chief. Through the discovery process, the defendant was provided with and the audio/ video recording, a draft transcript and an FBI 302 documenting the meeting. The FBI 302 references the approval process. However, the defendant is not entitled to any documents or records relating to any internal Department of Justice approval process. No policy creates any substantive right for a defendant. Moreover, the defendant's request is not justifiable under any theory of federal criminal discovery.

> **A. Balagia's Request for Administrative Records and OFAC licenses Is Not Permitted under Rule 16 of the Federal Rules of Criminal Procedure.**

Federal Rules of Criminal Procedure 16 requires, among other things, that the Government produce to the defendant the following items:

- The defendant's statements (oral, written, or recorded);
- The defendant's prior criminal record;
- Documents and objects, in the possession of the United States, that (i) are material to the preparation of the defense; (ii) the Government intends to use at trial; or (iii) belong to the defendant;
- Reports of examinations or tests, in the possession of the Government, that are material to preparing the defense or that the Government intends to use in its case-in-chief;
- Materials relating to expert witnesses.

FED. R. CR. P. 16(1)(A)-(G). If the discovery sought does not fall within these parameters, it is not discoverable under Rule 16. Balagia's improper requests, seeking OFAC licenses from other attorneys, files from a foreign attorney, administrative documents from a

foreign jail, and administrative documents from a local county jail, do not qualify as (1) the defendant's statement; (2) the defendant's prior criminal record; (3) a report or examination of a test; or (4) materials relating to expert witnesses. *See id*. The requested materials are also not documents belonging to Balagia, and the Government does not intend to rely on these requested records in its case-in-chief.

For a defendant to be entitled to items "material to preparing the defense," *see* FED. R. CR. P. 16(A)(1)(E)(i), he must make a *prima facie* showing of reasonableness and materiality. *See, e.g. United States v. Buckley*, 586 F.2d 498, 506 (5th Cir. 1978); *United States v. White*, 450 F.2d 264, 267 (5th Cir. 1971). "Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975) (citation omitted). To demonstrate materiality, the pretrial disclosure of the evidence must "significantly alter the quantum of proof in [the defendant's] favor." *Id*. at 763. The Court should also consider the extensiveness of the materials already produced by the Government. *See id*. To demonstrate reasonableness, the defendant's request must not be unduly burdensome to the Government and must be specifically framed. *See id*. Generally, the "kind of documents discoverable are [] those **that relate to the defendant and the charge against him, not to third persons**." *See United States v. Murdock*, 548 F.2d 599, 600 (5th Cir. 1977) (emphasis added). In short, Balagia is "not [] allowed to conduct a fishing expedition." *White*, 450 F.2d at 268 (no citation).

Here, Balagia's requests are neither reasonable nor material and are, in fact, a fishing expedition. As to materiality, the disclosure of (1) OFAC licenses of other attorneys; (2) records belonging to a foreign attorney; (3) administrative records of a Colombian jail; and (4) administrative records of a local county jail all related to third persons and will not "alter the quantum of proof in his favor." *Ross*, 511 F.2d at 762-63 (holding that documents requested by the defendant in tax case, which tended to show defendant's net worth were not material and therefore, not discoverable under federal criminal discovery rules); *Buckley*, 586 F.2d at 506 (holding that where defendant failed to make showing of materiality, he was not entitled to internal FBI investigative files). Disclosure of any OFAC licenses or internal documents relating to the recording of meetings consented to by Segundo and Ademar Seguara, if these documents exist, have *no bearing* on the disputed facts in this case and, in fact, do not relate the charges against Balagia. *See Murdock*, 548 F.2d at 600; *United States v. Jasper*, 2003 WL 21709447, at \*3-4 & n.6 (S.D.N.Y. July 23, 2003) (unpublished) (rejecting defendant's discovery request for witness's e-mails that had no relevance to the facts at issue). Balagia's request should accordingly be denied.

**B. Balagia's Discovery Request Is Not Permitted Under Any Other Theory of Criminal Discovery.**

In addition to the obligations flowing from Rule 16 of the Federal Rules of Criminal Procedure, the Government has a duty to produce records (1) required pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963); (2) required to be provided under the *Jencks* Act (

U.S.C. § 3500); and (3) required to be produced under *Giglio v. United States*, 450 U.S. 105 (1972). Broadly, *Brady v. Maryland*, 373 U.S. 83 (1963) requires the Government to produce evidence favorable to the accused relating to guilt or punishment. *See* 373 U.S. 83, 87 (1963); *United States v. Davis*, 609 F.3d 663, 698 (5th Cir. 2010). Here, Balagia's request seeks OFAC licenses and internal administrative records from Colombia and the Collin County jail; such information *does not in any way* relate to any issue of guilt or punishment with respect to Balagia. The disclosure of this material does not, for example, make it more or less probable that Balagia and others intentionally led criminal defendants to believe that they had the ability to obtain favorable outcomes in cases because they would pay federal prosecutors and judges. Balagia's requested administrative files simply have no bearing on the issues relating to guilt in this case and, as such, does not qualify as *Brady* material.

The *Jencks* Act, 18 U.S.C. § 3500, generally requires the production statements made by *witnesses* that relate to the subject matter on which the witness has testified. *See* 18 U.S.C. § 3500(b), (e)(1); *United States v. Naranjo*, 309 Fed. Appx. 859, 865 (5th Cir. 2009) (unpublished). Again, by the very words of the statute, the *Jencks* Act only requires the production of *witness* statements; here, Balagia seeks institutional documents from a foreign jail, a foreign attorney, and a county jail, not witness statements. Thus, the *Jencks* Act does not compel the production of this material. *See id*.

Finally, *Giglio v. United States*, 405 U.S. 150 (1972) requires the Government to

**Response to Defendant's Second Motion to Compel – Page 11**

produce evidence useful to the defense for impeachment purposes. *See, e.g.* 405 U.S. 150; *United States v. Scott*, 245 Fed. Appx. 391, 395 (5th Cir. 2007) (unpublished). Such a requirement necessarily presupposes that the impeachment material at issue relates to an individual called as a witness by the Government. Such information is thus not discoverable under *Giglio*. Accordingly, because no theory of federal criminal discovery supports his request, Balagia's request should be denied.

The United States urges the Court to deny this request.

> **5.** **All oral or written communication of any sort including but not limited to notes of in person meetings, notes of phone calls, recordings of phone calls, emails, texts and/or letters between Rafael De La Garza and any employee of the DOJ regarding any defendant in this cause, Norman Silverman, Daphne Silverman, James Balagia, and/or any other person associated with this case.**

The defendant very broadly requests all records of any communication related to this case between attorney Ralph De La Garza and the Department of Justice. Mr. De La Garza represents co-defendant Charles Norman Morgan who has entered a guilty plea in this case. The defendant has not established why any communications with Mr. De La Garza would be relevant. The United States urges the Court to deny this request.

> **6.** **With regards to JMM and her daughter, all documents in their files with the state court of prosecution including all correspondence between the prosecutors and the law office of James Balagia, all correspondence among prosecutors in the office prosecuting the cases, and all discovery in their cases. Balagia's defense is that he effectively represented these ladies in Court. As a result, the prosecution file is substantive evidence in the defense case in Chief.**

The defendant requests the state district or county attorney files related to the state prosecution of JMM and her daughter. The United States does not have these files. The defendant was the attorney of record for JMM and her daughter in the state cases. As the defense attorney representing JMM on the state charges, the defendant would have the correspondence between himself and the state prosecutor and the discovery provided in the case. As justification for this broad request, the defendant states his "defense is that he effectively represented these ladies." There is no inference or allegation in this federal case that the defendant provided ineffective assistance in the state case. The allegation in this federal case is that law enforcement seized $50,000.00 from JMM and her daughter. The defendant persuaded law enforcement to return the money seized from JMM to him (the defendant). The defendant then kept the money and did not return it to JMM. This allegation has nothing to do with whether JMM received effective assistance of counsel in the state case. The requested matters are irrelevant and not in the possession of the United States. The United States urges the Court do deny this request.

7. **With regards to any bar complaints or bar matters involving James Balagia, any oral or written communication of any sort including but not limited to notes of phone calls, recordings of phone calls, emails, texts between any member of the State Bar of Texas and any employee of the DOJ or any employee of the FBI.**

The defendant requests communication or documentation of communication related to the defendant between the State Bar of Texas and any federal employee. The defendant does not explain how this material would be relevant or discoverable. If a

representative from the Texas State Bar or a federal employee were called as a witness at trial, the requested information may be *Jencks* or *Giglio.* Then the requested material might be discoverable under this Court's Order. However, the defendant does not explain why this information would be discoverable at this point. The United States urges the Court to deny this request.

> **8. Any photographs in the government's possession of any of the defendants in this cause that have not previously been provided.**

The United States agrees to this request. The United States provided all photographs to the defendant. If there is a specific concern related to any photograph the defendant believes exists, but that he has not been provided through the discovery process, the United States requests that the defendant advise the prosecutor.

> **9. Any devices or downloads of any devices involving or in regards to any co-defendant in this cause including but not limited to the IPad belonging to one of the co-defendants that has been previously discussed with the government that has on it pictures of high ranking government officials and drug traffickers in Colombia.**

The United States agrees to this request. The defendant has previously informed the United States that co-defendant Charles Norman Morgan had an IPad and the defendant has requested access to the contents. The United States (including the FBI) does not have Charles Norman Morgan's IPad and does not have any contents of Charles Norman Morgan's IPad.

> **10. All files of the USDOJ on the underlying drug trafficking defendants – Hermes Cassanova Ordonez, Segundo Segura, and Aldemar Segura-**

> including but not limited to the file in the Sherman office of the USDOJ that is prosecuting the underlying drug trafficking defendants. We have not requested these documents previously because AUSA Rattan advised that she was walled off from the Sherman file in order to avoid a conflict. As noted in our Motion to Disqualify the prosecutors in this case, the wall has interfered with the discovery of relevant documents. The defense has moved to disqualify the prosecutors in the case, and now seeks the production of these files. The files should include the discovery in their cases, all correspondence with defense counsel, all correspondence with any law enforcement officer, and all correspondence between employees of the USDOJ.

The defendant broadly requests the DOJ files of the drug trafficking defendants referenced in the Fourth Superseding Indictment who themselves are charged in EDTX cause number 4:38cr38. The United States agrees to provide all correspondence between the defendant and the United States Attorney's Office. However, the contents of the files would only be discoverable as *Jencks* or *Giglio* if the drug trafficking defendant were to testify. If the drug trafficking defendant were to testify, the United States would provide the appropriate materials consistent with this Court's discovery order. The United States urges the Court to deny this request as overly broad.

> **11.** All recordings of phone calls from any jail for all persons associated with this case who have been incarcerated at any time regardless of who was called. Those related to the case who have been incarcerated at some time include but are not limited to: JMM and her daughter, all defendants in this cause as well as Aldemar Segura, Segundo Segura, and Hermes Casanova Ordonez.

The defendant requests all "jail" phone calls of anyone associated with this case. This request is overly broad. The United States agrees to provide "jail" calls under the

following circumstances: (1) if the United States has obtained any "jail" calls and plans to use the calls as evidence in it's case in chief; or, (2) if the United States has obtained any "jail" calls involving any witness who will be called by the United States (these calls would then be available as *Jencks* or *Giglio* material). Any additional "jail" calls should be subpoenaed by the defendant. If the defendant does subpoena the "jail" calls, the United States requests reciprocal discovery.

> **12.   All reports or other documentation of any investigation of the people who may have at any time been law enforcement connections or handlers or any other relationship by whatever name its known for a co-defendant in this matter including the people referenced in Washington D.C. who originally worked in San Antonio, the Professor in Ohio who also has a condo in Florida, the officers identified to the Court previously through a codefendant's lawyer and any other people developed in this investigation by law enforcement or the prosecution.**

The United States is unclear what this request asks for. However, it appears to be an irrelevant fishing expedition and is therefore objectionable. The United States urges the Court to deny this request.

> **13.   A.F. - all documents in his file with the state court of prosecution including all correspondence between the prosecutors and the law office of Jamie Balagia, all correspondence between prosecutors in the office prosecuting the case, and all discovery in his case. As with the allegations by the ladies, Balagia's defense is that he effectively represented A.F. in Court. As a result, the prosecution file is substantive evidence in the defense case in Chief.**

The defendant requests the state district or county attorney files related to the state prosecution of A.F. The United States does not have these files. As the defense

attorney involved with A.F., the defendant should have the correspondence between himself and the state prosecutor and the discovery provided in the case. As justification for this broad request, the defendant states his defense is that he "effectively represented A.F. in court." There is no inference or allegation in this federal case that the defendant provided ineffective assistance in A.F.'s state case. The United States urges the Court to deny this request.

Respectfully submitted,

JOSEPH D. BROWN
UNITED STATES ATTORNEY

/s/
HEATHER RATTAN
Assistant United States Attorney
Texas Bar No. 16581050
101 East Park Blvd., Suite 500
Plano, Texas 75074
Phone (972) 509-1201

## CERTIFICATE OF SERVICE

This is to certify that on March 15, 2019, I filed this document with the Clerk using the CM/ECF filing system.

/s/
Heather Rattan