# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **CRIMINAL ACTION NO.** |
| **Plaintiff,** | § | |
| | § | **4:16-CR-176** |
| v. | § | |
| | § | |
| **JAMES MORRIS BALAGIA,** | § | |
| **Defendant.** | § | |

**Reply to Government's Response to Defendant's Motion for Order to Show Cause**

Saturday, June 15, will mark ***an entire year*** from the start of the government's discovery games launched to keep this prosecution shrouded in secrecy. None of the disputed documents have been produced despite numerous emails, phone calls, motions, and the in-court agreements blessed by the Honorable Magistrate Judge Christine Nowak.

On June 15, 2018, defense counsel (Daphne and Norm Silverman) met with the government (Heather Rattan and FBI SA Jason Rennie) regarding discovery. In that meeting, undersigned counsel identified Mr. Balagia's defenses and the documents in the government's possession that defense counsel would need in order to prove Mr. Balagia's direct defenses to the government's allegations. In that meeting undersigned counsel told the government that Mr. Balagia was innocent and that language perceived by Rattan and Rennie to be a crime was in fact language used in particular government operations.   In that meeting, undersigned counsel told the government what she had learned about Charles Morgan and about the "Program" that Morgan was using as a type of government agent in this case.  In that meeting, Rattan stated that she understood that what the defense sought was discoverable immediately pursuant to Rule 16 as "material to the preparation of the defendant's defense."  The discovery requests are not and have never been a fishing expedition. The government knows this is not a fishing expedition.  To claim that the defense requests are a fishing expedition displays a flagrant lack of candor.

1

Since the discovery meeting, instead of producing documents, the government engaged in a year of obfuscation, delay tactics, secrecy, fake courtesy embedded in semantics, misleading promises in Court and finally filing malicious allegations against defense counsel, all in order to attempt to avoid producing Rule 16 defense evidence. The defense has diligently pursued the information through its own investigation spanning the globe.  The year of failure to produce records and games implemented to accomplish the delay reflect bad faith by the government.

The most recent game is the "my fingers were crossed game." An agreement is an agreement. The government agreed to a resolution of disputed motions.   The prosecutors' plan seems to have been to agree to produce the documents in order to avoid a hearing and then, if after they see the records they do not want to produce them, then they claim they never agreed to produce the records. Their fingers were crossed. The Government is acting in bad faith by crossing its fingers.

Government counsel responds that the government is just "helping the defense."  If the Government was helping the defense, the defense would have received records in 2018.  The prosecutor is obligated to produce these materials pursuant to Rule 16 and the prosecutor knows it. The issues were twice purportedly resolved in Court by agreement, the last time by issuance of subpoenas.  Subpoenas have produced records, but those records have not been provided to the defense. The government has ignored the parties' agreement.   The defense did not agree to an agreement that did not produce records. The defense twice traveled to the EDTX to have a hearing on these issues. The defense only gave up the hearing after reaching an agreement for production. The defense expected to receive documents.  Instead, precisely when the government was supposed to produce documents, the government derailed the discovery process by secretly filing allegations against counsel.  The "helping the defense" argument lacks candor and is evidence of bad faith.

 Government counsel further responds that that the defense seeks documents to attack the government's conduct rather than for its defense.  Again, this is not true. The prosecutor again

misdirects the Court from the real issues. The defense seeks documents necessary for presentation of Mr. Balagia's defenses.  Such an allegation in the response to the defense pleading reveals a guilty conscious by government counsel. This argument in the pleading is evidence of bad faith by the government.

In the Government's Response, the government references some of the correspondence that was exchanged prior to the January 4 hearing.  The full correspondence is attached to the defense motion.  This correspondence as cited in the Response is misleading.  This correspondence is only helpful to show the immense patience that the defense showed to the government counsel.  It does not reflect any courtesy by the Government. Government counsel should not have needed a detailed explanation of what should be stated in the requests for information to government agencies with which it should be well familiar. The government knows what defense counsel needs and they know where it is kept.  The Government attempted to prevent counsel from accessing the data, by pretending they did not know where such information would be kept.  This is just more evidence of bad faith. Instead of attacking the government, the defense patiently explained exactly what the Government needed to do.  Of course, it was not done. As a result, the defense needed the January 4 hearing setting.   At the setting on January 4, the defense was again prepared to go forward with the disputed motions in hearing.  But on January 4, the government again promised to comply with their discovery obligations. The defense only agreed to a resolution of the disputed motions after an agreed mechanism was in place to guarantee that the government fulfilled its obligations by asking for the right things from the right people. The mechanism agreed to was defense drafted subpoenas that were to be served upon identified agencies.  The subpoenas were to be served and the documents produced pretrial and reviewed by the Court in camera if needed.

Even with a mechanism, the government still avoided its obligation by dating the subpoenas for the trial date.  Defense counsel caught this sneaky tactic and through a telephone hearing ensured

that the Government was ordered to change the date of production to the agreed date of January 18. This is more evidence of bad faith by the government.

Amazingly, the misconduct was not over, the government advised that some documents had been received by them, but since there was no formal procedure in place for in camera review, there was nothing the government could do.  Defense counsel asked the Government to take the records to the Magistrate.  The Government refused.  The Honorable Magistrate Judge Nowak was contacted and of course she agreed to receive and review the documents.  This is yet more evidence of bad faith by the government.

The bad faith then escalated when instead of producing documents, the Government sought to taint the District Judge (and the rest of the Court in the EDTX) by secretly informing the District Judge that counsel had prior incidents of revocation of pro hac vice status in Pittsburgh which should have been disclosed to the EDTX.   Undersigned disputes that the revocation of pro hac status requires disclosure to other courts. If the Government was truly concerned about counsel's fitness to practice law, Government counsel could have advised counsel she believed this incident required reporting.  Instead, she secretly informed the Court in the hopes of removing counsel from this case without having to produce the discovery requested.

It appears the government intends to produce these materials at the last minute when the defense will have insufficient time to review them. Review well in advance of trial, is required to determine if the materials are complete, if the defense needs additional materials, which witnesses the defense needs to prove its defenses, and which experts need to be designated to prove its defenses. Witnesses and experts in this case are spread out across the globe. If the Government does not comply with its obligations immediately, counsel will be forced to seek yet another trial continuance, again because of Government misconduct in failing to meet its discovery obligations.

"The government has gone well beyond its discovery obligations."   - Nonsense. **The government has produced none of the disputed materials.**   This is a federal court and these federal prosecutors have charged a former police officer and respected lawyer of 25 years with federal crimes and refused for a year to provide him with evidence necessary to defend himself.   Their allegations are unfounded, and yet Mr. Balagia faces prison and federal convictions when all he did was effectively represent clients.   In the process, the prosecutors have ended the life of Balagia's wife with the stress caused by these cruel charges.

It is time for these games to end. The government needs to be sanctioned sufficiently to force compliance with its discovery obligations.   Mr. Balagia respectfully requests sanctions be assessed at $7500 to cover the reasonable costs of the legal work necessary to litigate production of documents as well as daily sanctions of $1000 assessed to each prosecutor every day until they comply with their discovery obligations.

Respectfully submitted,

/S/ DAPHNE PATTISON SILVERMAN
Daphne Pattison Silverman
TBN 06739550
Silverman Law Group
501 N. IH-35
Austin, TX 78702
512-975-5880
Fax: 512-597-1658
daphnesilverman@gmail.com

### Certificate of Service

I certify that on June 14, 2019, this document was filed with the Clerk of the Court using the electronic case filing system that automatically sends notice of electronic filing to the attorneys of record who have consented to accept such service.

/S/ DAPHNE PATTISON SILVERMAN

Daphne Pattison Silverman